Dalia B. Kothari (SBN 299867)
kothari@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood, CA 94063
Tel. 650.839.5070
Fax: 858.678.5099

Attorneys for Defendant
FOSSIL GROUP, INC. AND MISFIT INC.

**Additional Counsel Listed on Signature Page**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

OAKLAND DIVISION

CELLSPIN SOFT, INC.,

Plaintiff,

v.

FOSSIL GROUP, INC. and MISFIT INC.,

Defendants.

**CASE NO. 17-cv-05933-YGR**

**DEFENDANTS FOSSIL GROUP, INC. AND MISFIT INC.'S REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES**

**Date: June 12, 2018**
**Time: 1:00 p.m.**
**Dept.: Courtroom 1, 4th Floor**
Judge: Hon. Yvonne Gonzalez Rogers

Cellspin's opposition confirms that this case is exceptional. Just as it did throughout the litigation, Cellspin continues to advance exceptionally weak arguments and cite inapplicable case law. For example, this Court has already determined that the presumption of validity is inapplicable "in the section 101 calculus," yet Cellspin improperly relies on this standard to argue that its litigation position was "reasonable." Cellspin's litigation position was not reasonable, however, because any reasonable litigant would have determined that Cellspin's claims are not meaningfully distinguishable from the plethora of Federal Circuit cases holding analogous claims ineligible. And despite Cellspin's assertions, the long line of applicable cases is not in any "flux"; Cellspin simply ignored this precedent. Although this case never should have been filed in the first place, Cellspin had an ongoing obligation to assess the strength of its litigation position, but did not. Instead, Cellspin advanced exceptionally weak arguments that found no support in law or fact, amended its complaint with allegations "pulled out of thin air," and continued to demand discovery from Fossil until after the Court's hearing on the Omnibus Section 101 Motion.

The Court need not accept Cellspin's request to defer ruling on the instant motion and may decide this issue now while the facts are fresh in the Court's mind. Fossil has had to incur significant fees in defending itself against an infringement suit that never should have been filed. Based on the totality of circumstances, Fossil is entitled to a finding of an exceptional case under 35 U.S.C. § 285 and an award of its attorneys' fees. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017) (concluding "that the district court acted within the

scope of its discretion in finding this case to be exceptional based on the weakness of [plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future"); *see also eDekka LLC v. 3Balls.com, Inc.*, No. 2:15-cv-541, 2015 WL 9225038, at *4 (E.D. Tex. Dec. 17, 2015) (finding case exceptional based in part because plaintiff "repeatedly offered insupportable arguments on behalf of an obviously weak patent").

## I. THE SUBSTANTIVE STRENGTH OF CELLSPIN'S POSITION WAS EXCEPTIONALLY WEAK

Contrary to Cellpsin's assertion, a case can be exceptional under the *Octane* framework if there exists ***either*** "subjective bad faith" ***or*** "exceptionally meritless claims" but not necessarily both. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014). A finding of subjective bad faith is not required here given that Cellspin's claims were exceptionally meritless. Indeed, it is difficult to conceive of computer activity more conventional than acquiring, analyzing, sending, receiving, and publishing data. A reasonable litigant would have no uncertainty or difficulty in applying the principles set out in the long line of Federal Circuit case law holding analogous claims patent-ineligible to reach the conclusion that the Asserted Patent claims are also ineligible. (Dkt. 92 at 12-14 (listing cases).)

Cellspin's own characterization of the claims would have left no doubt to any reasonable litigant that the claims were abstract. For example, Cellspin stated in its opposition to the Omnibus Section 101 Motion that the patents "relate to a [sic] specific and concrete approaches comprising, among other things, pairing, transferring, and publishing data to the Internet." (Dkt. No. 48 at 25.) There is simply

no "flux" or uncertainty in the law that claims like these—those that merely acquire, transfer, and publish data—are abstract. *See Electric Power Group LLC v. Alston S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) (rejecting claims "clearly focused on the combination of . . . abstract-idea processes" such as "collecting information," "analyzing information," and "presenting the results of abstract processes of collecting and analyzing information"); *Intellectual Ventures I LLC v. Capital One Financial Corp.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017) (claim "directed to . . . collecting, displaying, and manipulating data" is abstract).

Any reasonable litigant would also know that Cellspin's claims lack an inventive concept. The claims recite only generic computer terminology, which the specification describes as "technologies that are pervasive [and] flexible," such as a "ubiquitous mobile phone," "fairly widespread" personal digital assistants (PDAs), and "general purpose computers and computing devices." '794 Patent at 9:37-48, 10:10-13. The sole advance claimed in the Asserted Patents is simply automating the process of uploading data to a website, and the law is unambiguous that using generic computing technology to automate a process and save time or increase efficiencies is not an inventive step that can confer patentability. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("relying on a computer to perform routine tasks more quickly or accurately is insufficient to render a patent claim eligible"); *see also Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2359 (2014) ("use of a computer to create electronic records, track multiple transactions, and issue simultaneous instructions" is not an inventive concept); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (a computer

"employed only for its most basic function . . . does not impose meaningful limits on the scope of those claims").

Cellspin's claims, which use generic components in a conventional way to implement the abstract idea of acquiring, transferring, and publishing data, are thus in "stark contrast" to those in *Enfish* and *McRO*, and Cellspin's attempt to argue otherwise merely adds to the totality of circumstances[1] that this case is exceptional. *See My Health, Inc. v. ALR Techs., Inc.*, No. 2:16-cv-535, 2017 WL 6512221, at *4 (E.D. Tex. Dec. 19, 2017) (finding case exceptional in part due to the weakness of plaintiff's § 101 position in light of "[t]he numerous cases invalidating claims directed to information collection and analysis" and the asserted claims' "stark contrast" to the "handful of cases" like *Enfish*, which found a specific improvement to the way computers operate).[2]

Like the claims in *Inventor Holdings*, there is no uncertainty or difficulty in applying the principles set out by the Supreme Court in *Alice* and by the Federal Circuit in numerous cases to reach the conclusion that Cellspin's claims are ineligible. *See Inventor Holdings*, 876 F.3d at 1379. And contrary to Cellspin's assertion, there is no requirement that the analysis involve analogizing "nearly identical" claims found to be patent ineligible—in fact, the claims in *Inventor Holdings* were not "nearly

---

[1] As discussed herein, in addition to its exceptionally weak § 101 position, Cellspin caused Fossil to incur unnecessary fees responding to the baseless allegations in Cellspin's amended complaint, the baseless arguments at the hearing on the Omnibus Section 101 Motion, and Cellspin's improper discovery demands.

[2] Cellspin argues that *My Health* is distinguishable because circumstances existed in that case that are not present here. (Opp. at 17.) But Cellspin ignores that the totality of circumstances in this case also warrant a finding that this case is exceptional.

identical to the financial business method claims that the Supreme Court rejected in *Bilski* and *Alice*." (Opp. at 16-17.). The claims in *Inventor Holdings* related to a method of purchasing goods at a local point-of-sale system from a remote seller, *Inventor Holdings*, 876 F.3d at 1374, whereas the claims in *Alice* related to a computerized scheme for mitigating settlement risk, *Alice*, 134 S. Ct. at 2354. The claims were not identical, but the principles set forth in *Alice* do not require an element-by-element comparison to other claims held ineligible. Nonetheless, the *Inventor Holdings* claims were just as abstract as those in *Alice* because both were directed to a fundamental economic practice. *Inventor Holdings*, 876 F.3d at 1379. The plaintiff's position in *Inventor Holdings* was "exceptionally weak" because this determination did not require a "difficult line drawing exercise." *Id.* In this same way, Cellspin's litigation position was exceptionally weak because no reasonable litigant could believe that Cellspin's claims, which implement generic components in a conventional manner to acquire, transfer, and publish data, would withstand a § 101 challenge.

This case is thus "exceptional" because, under any objectively reasonable assessment, Cellspin should have known that its claims were patent-ineligible in view of the abundance of governing case law and its claims' "stark contrast" to those in cases where courts have found the claims patent eligible, like *Enfish* or *McRO*.

## II. CELLSPIN CAUSED FOSSIL TO INCUR UNNECESSARY FEES BY AMENDING ITS COMPLAINT WITH ALLEGATIONS REGARDING

**PURPORTED "IMPROVEMENTS" THAT HAD NOTHING TO DO WITH THE ASSERTED PATENTS**

By amending its complaint with baseless allegations just days before the hearing on the Omnibus Section 101 Motion and filing "supplemental authority" that had no application to the facts in this case, Cellspin caused Fossil to incur additional (and unnecessary) fees.[3] Cellspin's conclusory allegations that its asserted claims were directed to specific improvements or included inventive concepts were objectively unreasonable because they were not grounded in fact and thus went beyond a mere "mis-reliance." (Opp. at 14.) In fact, Cellspin acknowledges that the purported improvements are "not specifically called out in the specification." (*Id*. at 12.)

This case is thus unlike *Aatrix Software*, where there were "concrete allegations" that the invention was not conventional and that the invention was an "improvement to the functioning of the computer." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). Specifically, in *Aatrix*, the "specification describe[d] the structure" of the inventive "data file" in the patent claims, "including the 'forms index file' that 'provides the vendor application with information on the forms available to the program.'" *Id*. at 1129. Moreover, the defendant "conceded that nothing in the specification describe[d] this importation of data as conventional." *Id.* In light of the description in the specification and the "data file" in the claims, along with plaintiff's allegations and a potential claim construction

---

[3] Among other things, Fossil and the other Defendants filed a supplemental brief to address the new allegations in Cellspin's amended complaint. (Dkt. No. 71.)

dispute regarding the term "data file," the Court determined that there were issues of fact preventing dismissal at the pleading stage. *Id*. at 1129-30.

Here, in contrast, Cellspin's allegations regarding the alleged invention's benefits of reduced power consumption through a "low power state," improved battery life, and reduced cost found no support in the Asserted Patents. (*See* Dkt. No. 85 at 18.) Where Cellspin did provide citations to the Asserted Patents, the citations only underscored that its allegations were completely divorced from what is actually disclosed in the specification and what is actually covered by the asserted claims. (*Id.* at 17.) Indeed, Cellspin made the same conclusory statements regarding the alleged "benefits" in its opposition to the Omnibus Section 101 Motion well before it amended its complaint. (Dkt. No. 48 at 8, 10, 15.) Defendants pointed out in their Ominbus Reply that Cellspin's allegations found no support in the specification. (Dkt. No. 58 at 4-11.) But Cellspin ignored this and amended its complaint anyway. Cellspin's continued reliance on *Aatrix* is misplaced because Cellspin's allegations were neither "concrete" nor tied to anything in the patents—they were pulled out of thin air.

Cellspin's amendment and conclusory arguments confirm the exceptional weakness of its § 101 position. The allegations concerning the purported "improvements" were not merely "unsuccessful," (Opp. at 12-13), but rather further grounds for finding this case exceptional. *See Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1389 (Fed. Cir. 2017) (reversing denial of attorneys' fees based in part on plaintiff's counsel's and founder's conclusory and unsupported statements concerning the validity of the

asserted patent). Cellspin was not entitled to simply make up arguments to support its claims and prolong a case that should never have been filed in the first place. *See, e.g.*, *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) ("Because the specification and prosecution history clearly refute [the patentee's litigation position], the district court did not err in finding that [the patentee's] infringement claims were objectively baseless."); *Eon–Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011) (same).

## III. CELLSPIN'S CONTINUED DEMANDS FOR DISCOVERY CAUSED FOSSIL TO INCUR ADDITIONAL AND UNNECESSARY FEES

Cellspin's contention that it "promptly stipulated to the withdrawal of its discovery requests and for a stay of all scheduling order deadlines" (Opp. at 6) is incorrect. Instead of dismissing its case or agreeing to stay discovery, after the defendant filed their omnibus motion, Cellspin demanded ongoing discovery, causing Fossil to incur additional (and unnecessary) fees. For example, in the parties' Joint Case Management Statement, filed more than one month after Fossil first filed its initial Section 101 Motion (Dkt. No. 35), Defendants proposed that the Court continue discovery "in order to facilitate efficient resolution of this litigation without unnecessary burden and expense." (Dkt. No. 43 at 8.) Cellspin made clear that it was not interested in staying discovery, stating: "Plaintiff disagrees that any discovery or discovery dates should be postponed or continued in view of Defendants' pending motions, which Plaintiff submits lack merit. Postponing discovery is unfairly prejudicial to Plaintiff." (*Id.*) A few days later, Cellspin propounded its first set of discovery requests.

At the Case Management Conference, the Court addressed the issue of discovery and, in its Pretrial Order, ordered that no further discovery may be served pending resolution of the Section 101 Motion. (Dkt. No. 51 at 4 ("With respect to the request to stay discovery, defendants are instructed to serve objections consistent with the Court's Local Patent Rules. No further discovery may be served until the Court issues orders with respect to the pending motions to dismiss.").) Following the Court's instruction, Fossil served timely objections to Cellspin's discovery requests. Cellspin nonetheless continued to demand substantive discovery responses from Fossil and the other Defendants, despite the Court's instruction, and insisted on a meet and confer to discuss what Cellspin framed as Fossil's "wholly deficient" responses. (Ex. 1.) It was not until a few days after the hearing that Cellspin finally agreed to a stay of discovery until the resolution of the Omnibus Section 101 Motion. (Ex. 2.)

Cellspin had a continuing obligation to assess the strength of its litigation position, but did not comply with that obligation. *See Taurus IP, LLC v. DaimlerChrysler Corp*., 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of [its] claims . . ."). Even after it had the benefit of the Defendants' § 101 arguments, identifying the plethora of Federal Circuit cases holding analogous claim patent-ineligible, Cellspin advanced arguments that were not grounded in law or fact and continued to demand discovery from Fossil. Cellspin did so despite the Court's instruction in the Pretrial Order and for the sole purpose of prolonging the inescapable conclusion that its patents were invalid. All the while, Fossil continued to incur significant fees to defend itself against claims that should never have been filed in the

first place. There thus exist substantial considerations and needs for deterrence based on the weakness of Cellspin's § 101 arguments and its litigation tactics. Based on the totality of circumstances, Fossil is entitled to an award of its attorneys' fees for defending this meritless case.[4] *See Inventor Holdings*, 876 F.3d at 1377.

## IV. THERE IS NO PRESUMPTION OF PATENT-ELIGIBILITY

Cellspin's argument that this case is not "exceptional" because it was entitled to "presume" that its claims were valid lacks merit. Patents are not presumed eligible. *See generally Alice*, 134 S. Ct. 2347 (not mentioning the existence of a presumption of eligibility); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) ("The reasonable inference . . . is that while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus.") (citation omitted).

The presumption of validity applies to validity issues, not to eligibility issues, as the two issues are separate inquiries. *See Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*, 841 F.3d 1288, 1306 (Fed. Cir. 2016). ("To be clear: ruling these claims to be patent-eligible does not mean that they are valid; they have yet to be tested under the statutory conditions for patentability, e.g., §§ 102 (novelty) and 103 (non-obvious subject matter), and the requirements of § 112 (written description and enablement) . . . ."). In other words, to be valid, a patent must, *inter alia*, satisfy the requirements of

[4] Indeed, even if Cellpsin did not realize at the time it filed its Complaint that its claims were ineligible, the weakness of Cellspin's § 101 arguments would have become clear to any reasonable litigant at the time Fossil first filed its Section 101 Motion. *See Taurus IP*, 726 F.3d at 1328. At a minimum, therefore, Fossil is entitled to its fees incurred since December 21, 2017, the date it initially filed its motion to dismiss.

§§ 102, 103, and 112. *Id*. The eligibility inquiry, however, focuses on whether the patent is directed to eligible subject matter—it is a threshold inquiry involving what should be considered patent-eligible. Therefore, claims may be patent-eligible while still being invalid for failing one of the statutory conditions for patentability, just as claims that may be valid under the validity sections may be directed to (and claim) patent-ineligible subject matter. Indeed, the Supreme Court has underlined the difference between validity and eligibility:

> Section 101, however, is a general statement of the type of subject matter that is eligible for patent protection "subject to the conditions and requirements of this title." Specific conditions for patentability follow and § 102 covers in detail the conditions relating to novelty. ***The question therefore of whether a particular invention is novel is wholly apart from whether the invention falls in a category of statutory subject matter***.

*Diamond v. Diehr*, 450 U.S. 175, 189-90 (1981) (emphasis added) (quotation, internal citation omitted).

Cellspin's authority for arguing otherwise consists of (1) the Federal Circuit's *Alice* opinion and (2) a footnote in a non-precedential Federal Circuit opinion. But the Federal Circuit's *Alice* opinion was clearly replaced by the Supreme Court's opinion, and the Supreme Court was notably silent on the presumption of eligibility. *See generally Alice*, 134 S. Ct. 2347 (not mentioning the existence of a presumption of eligibility). The footnote in *Tranxition, Inc. v. Lenovo*, 664 F. App'x 968, 972 n.1 (Fed. Cir. 2016), on which Cellspin relies does not recognize "a presumption of validity regarding issues of abstractness," but merely states that the panel was "not persuaded that the district court was correct that a presumption of validity does not apply."

Cellspin's "presumption" argument highlights the exceptionally weak litigation positions it has taken throughout this case. For example, in cherry picking the two cases noted above, Cellspin ignores that this Court has expressly recognized that "no [] presumption of eligibility applies in the section 101 calculus.'" *OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 1535328, at *3 (N.D. Cal. Apr. 6, 2015) (Jones, J.) (stating "the Federal Circuit has made it clear that 'while a presumption of validity attaches in many contexts, no equivalent presumption of eligibility applies in the section 101 calculus'") (citation omitted). If it were true that the presumption of validity applies to eligibility and is a sufficient shield to exceptionality, then cases like *Inventor Holdings* and *eDekka* would have been decided differently, and no patent case could ever be found exceptional based on the objective ineligibility of the asserted claims. Cellspin simply ignored the principles in *Alice* and the abundance of clear guidance from the Federal Circuit regarding claims in this category that should have given any litigant a reasonably clear view of § 101's boundaries. It cannot now hide behind a presumption that this Court has stated does not apply to this issue.

## V. THE ASSERTED PATENTS' ISSUANCE IS NOT "OBJECTIVE EVIDENCE" THAT CELLSPIN'S LITIGATION POSITION WAS REASONABLE

Contrary to Cellspin's assertion, the "very recent issuance of Cellspin's latest two [non-asserted] patents" is not "objective evidence" that the Asserted Patents were patent-eligible. The claims were properly analyzed by the Court under the appropriate § 101 jurisprudence, and through those lens, it should have been clear to Cellspin that

the Asserted Patents are directed to patent-ineligible subject matter. The fact that some of Cellspin's patents issued after *Alice* does not alter this conclusion. *See, e.g., Collarity, Inc. v. Google Inc.*, No. 11-1103-MPT, 2015 WL 7597413, at *11 (D. Del. Nov. 25, 2015, Order) (rejecting patent owner's argument that the asserted patent should not be found invalid under § 101 because the USPTO issued a related patent after the *Alice* decision and noting that "[w]hether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a threshold inquiry to be determined as a matter of law [by the district court] in establishing the validity of the patent" (alteration in original, quotation omitted)); *see also MacroPoint, LLC v. FourKites, Inc.*, No. 1:15-cv-1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015), *affirmed*, 671 Fed. Appx. 780 (Fed. Cir. Dec. 8, 2016) ("Contrary to plaintiff's argument, the fact that the PTO may have considered *Alice*-based guidelines before issuing the patents-in-suit does not mandate a finding that the patents are valid."); *Zimmers v. Eaton Corp.*, No. 2:15-CV-2398, 2016 WL 4094870, *4 n.1 (S.D. Ohio Aug. 2, 2016) (granting judgment on the pleadings that patents issued post-*Alice* were patent-ineligible under § 101).

## VI. FOSSIL'S DECLARATION IN SUPPORT OF ITS FEES MOTION DIRECTLY TRACKS THE REQUIREMENTS SET FORTH BY LOCAL RULE 54-5(B)

Cellspin's argument that the support for Fossil's fee request is insufficient is meritless. Not surprisingly, Cellspin points to no decision from this Court finding that declarations such as Fossil's are inadequate. To the contrary, Fossil's declaration in support of its fees motion directly tracks the requirements set forth by Local Rule 54-

5(b). Per this Rule, the Court "may require production of an abstract of or the contemporary time records for inspection . . . as the Judge deems appropriate." Should the Court find such additional information to be necessary or appropriate, Fossil will provide it pursuant to the Local Rules. But Cellspin's manufactured deficiency in Fossil's motion and supporting declaration is not a reason to deny Fossil's request for attorneys' fees.

## VII. FOSSIL'S MOTION SHOULD BE DECIDED NOW

To have a just, speedy, and final determination of the entire case, the Court should decline Plaintiff's request to defer ruling on Fossil's Motion until after the appeal. (Opp. at 5.) The Ninth Circuit expressly permits the district court to retain jurisdiction when a case is on appeal to consider a motion for attorney's fees, explaining that this "best serves the policy against piecemeal appeals," and "will prevent postponement of fee consideration until after the circuit court mandate, when the relevant circumstances will no longer be fresh in the mind of the district judge." *Masalosalo v. Stonewall Ins. Co*., 718 F.2d 955, 957 (9th Cir. 1983) (citations omitted).

In accordance with these principles, judicial economy is best served by ruling on Fossil's Motion now, while the issues are still fresh in the mind of the Court. *See id.* Cellspin has made no showing that it is likely to prevail on appeal. *See Castillo-Antonio v. Iqbal*, No. 14-CV-03316-KAW, 2017 WL 1113300, at *5 (N.D. Cal. Mar. 24, 2017) (declining to enter a stay "because Defendants provide no reason why the Court should delay ruling" and "have made no showing . . . that they are likely to prevail on an appeal"). Moreover, any deferral would be prejudicial to Fossil, who

has a natural and obvious interest in the prompt recovery of its fees. *See, e.g., Apple Inc. v. Samsung Electronics Co*., No. 11-CV-01846-LHK, 2014 WL 4745933, at *4 (N.D. Cal. Sept. 19, 2014) (analogizing motions for costs and fees, declining to defer a ruling on costs until after appeal, and recognizing that the prevailing party has an interest in the prompt payment of its taxable costs). The Court should thus decline Plaintiff's request and decide Fossil's Motion now. *See Xu v. Yamanaka*, No. 13-CV-3240 YGR, 2014 WL 3840105, at *5 (N.D. Cal. Aug. 1, 2014) (declining to defer a ruling on the attorneys' fees motion until after an appeal).

**VIII. CONCLUSION.**

For the foregoing reasons, Fossil respectfully requests that this Court grant its Motion, find this case exceptional, and award Fossil its attorneys' fees of $319,262. Conrad Decl., Ex. 3.

Dated: May 22, 2018

FISH & RICHARDSON P.C.

By */s/ Dalia B. Kothari*

DALIA B. KOTHARI (SBN 299867)
kothari@fr.com
500 Arguello Street, Suite 500
Redwood City, CA 94063
Tel. 650.839.5070
Fax: 858.678.5099

DAVID B. CONRAD
conrad@fr.com
NEIL J. McNABNAY
mcnabnay@fr.com
RICARDO J. BONILLA
rbonilla@fr.com
THERESA M. DAWSON
tdawson@fr.com
1717 Main Street, Suite 5000
Dallas, TX 75201
Tel. 214.747.5070
Fax: 214.747.2091

ATTORNEYS FOR DEFENDANT
FOSSIL GROUP, INC. AND MISFIT INC.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document including all of its attachments with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **May 22, 2018**. I further certify that service will be accomplished by the CM/ECF system and paper copies shall be served by first class mail, postage prepaid on all counsel who are not served through CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **May 22, 2018**.

/s/ *Cecilia Acosta*
Cecilia Acosta